UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABAYOMI KALEJAIYE<br>5028 PLATA STREET<br>CLINTON, MARYLAND 20735<br><br>　　Plaintiff,<br>v.<br><br>QUALITY INVESTIGATIONS, INC.<br>10120 S. EASTERN AVE., STE. 207<br>HENDERSON, NEVADA 89052<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Case No. 19-cv-02647<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Abayomi Kalejaiye, by and through undersigned counsel, herein states his Complaint against Quality Investigations, Inc., on the grounds and in the amount hereinafter set forth:

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII") to provide Abayomi Kalejaiye appropriate relief. As alleged with greater particularity in Paragraphs 10 through 29 below, Plaintiff alleges that Defendant Quality Investigations, Inc. unlawfully discriminated against him on the basis of his religion.

## PARTIES

1. Plaintiff Abayomi Kalejaiye is a resident of Oxon Hill, Maryland. Beginning in February 6, 2018, Mr. Kalejaiye was employed by Defendant, Quality Investigations, Inc. While employed by Defendant, Mr. Kalejaiye worked as a security officer at the Federal Aviation Administration Building, in Washington, D.C.

2. Defendant, Quality Investigations, Inc. ("QI Security"), is a Nevada corporation, with its corporate headquarters located at 10 Commerce Center Drive, Suite D-46, Henderson,

1

Nevada 89014. At all relevant times, QI Security did business in Washington, D.C., and was contracted to provide security at the Federal Aviation Administration Building, among other installations. While Mr. Kalejaiye was employed by QI Security, QI Security had at least 436 employees.

## JURISDICTION & VENUE

3. This Court has federal question jurisdiction over this case.

4. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964.

5. This Court has supplemental jurisdiction over Plaintiff's tortious interference claim, pursuant to 28 U.S.C. § 1367, because such claim arises from the same set of operative facts as Plaintiff's federal claims.

6. Venue is proper in the District of Columbia, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## CONDITIONS PRECEDENT

7. On June 26, 2018, Mr. Kalejaiye filed a Charge of Discrimination against QI Security with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination under Title VII.

8. On July 1, 2019, the EEOC issued a Notice of Suit Rights to Plaintiff [attached as Exhibit 1].

## STATEMENT OF FACTS & CLAIMS

9. It is Mr. Kalejaiye's bona fide and sincerely-held religious practice to grow out his beard. Such practice is the result Mr. Kalejaiye's bona fide and sincerely-held religious beliefs.

10. In early 2018, Mr. Kalejaiye was hired by QI Security for a position as an Armed Security Officer. On February 6, 2018, Mr. Kalejaiye submitted himself for a physical examination, as required by QI Security. As part of the physical examination, Mr. Kalejaiye was fitted with a gas mask to ensure that QI Security's standard-issue gas mask would fit properly. At the time of the February 6, 2018 physical examination, Mr. Kalejaiye wore a beard in excess of a quarter-inch in length. Mr. Kalejaiye successfully passed the gas mask fit test while wearing said beard.

11. On February 22, 2018, Mr. Kalejaiye began his post as a security officer with QI Security, and was stationed at the Federal Aviation Administration Building in Washington, D.C.

12. On February 23, 2018, Mr. Kalejaiye requested from QI Security a religious accommodation for his sincerely-held religious practice of growing out his beard. Mr. Kalejaiye requested that he permitted to grow his beard freely, and in excess of a quarter-inch. QI Security requires employees' beards to be less than a quarter-inch in length. This request was made via e-mail to his supervisor, Zebedee Middleton.

13. On March 5, 2018, Candy Ewen, a QI Security Human Resources employee, informed Mr. Kalejaiye via e-mail that QI Security had received his request for a religious accommodation. Ms. Ewen stated that the only issue QI Security would need to address in assessing Mr. Kalejaiye's request was whether Mr. Kalejaiye's beard would interfere with the sealing of QI Security's gas masks.

14. On March 18, 2018, Mr. Kalejaiye, believing that Ms. Ewen's March 5, 2018 e-mail was requesting that he be fitted for a gas mask again, offered to submit himself for an additional fit test. Ms. Ewen responded by saying that she believed that the results from the February 6, 2018 Concentra gas mask fit test would be sufficient to show that the gas mask would properly seal.

15. On March 19, 2018, Ms. Ewen e-mailed Mr. Kalejaiye stating that she had received his Concentra fit test results and confirmed that the gas mask had properly sealed. Mr. Kalejaiye responded by asking if QI Security was therefore granting his request for a religious accommodation. Ms. Ewen then asked Mr. Kalejaiye about the current length of his beard. Mr. Kalejaiye informed Ms. Ewen that his beard was of a similar length to what it was during the Concentra fit test.

16. On March 20, 2018, Ms. Ewen informed Mr. Kalejaiye that one of his supervisors, Major Chester Wallace, "says you are out of compliance not just your beard." However, Mr. Kalejaiye, despite meeting regularly with Major Wallace, had never been notified by Major Wallace or any other supervisor that he was "out of compliance."

17. On March 26, 2018, Mr. Kalejaiye received a phone call from Major Wallace. Major Wallace informed Mr. Kalejaiye that a QI Security project manager had instructed him to inform Mr. Kalejaiye that he would be removed from the work schedule effective immediately if he did not bring his facial hair in compliance with Department of Homeland Security "Smartbook" regulations, which required beards to be no longer than a quarter-inch, absent a religious accommodation. Mr. Kalejaiye's next shift was later that day.

18. After speaking with Major Wallace, Mr. Kalejaiye e-mailed QI Security requesting an official response to his request for religious accommodation. Ms. Sabrina Orquel—Ms. Ewen's replacement—responded: "QI Security provides for religious accommodation provided that it does not cause an undue hardship for the company." QI Security did not specify what, if any, undue hardship was being referred to. Mr. Kalejaiye reminded Ms. Orquel that he needed clarification regarding his request for religious accommodation by the end of the day, because he was being threatened with removal from the schedule if he did not shave his beard to a quarter-inch. Mr. Kalejaiye did not receive a response.

19. Mr. Kalejaiye ultimately decided to show up to his March 26, 2018 shift without shaving his beard to a quarter-inch. Neither Major Wallace nor any other QI Security supervisor scrutinized the length of Mr. Kalejaiye's beard, and he worked his shift normally.

20. On March 28, 2018, Mr. Kalejaiye e-mailed QI Security summarizing his perspective and addressing his concerns with QI Security's handling of his request for a religious accommodation.

21. Between March 26, 2018 and June 10, 2018, Mr. Kalejaiye was allowed to work without issue, despite his beard being in excess of a quarter-inch in length.

22. On June 11, 2018 and June 12, 2018, Mr. Kalejaiye was not permitted to work because of the length of his beard. On June 13, 2018, Major Wallace told Mr. Kalejaiye: "if you continue to report for duty out of compliance you will not be allowed to go to post." When Mr. Kalejaiye inquired into the status of his request for a religious accommodation, Jason Ricks, a QI Security Deputy Project Manager, told Mr. Kalejaiye that his request for a religious accommodation could only be approved or disapproved by the government, not QI Security.

23. On June 21, 2018, after eight days of reporting to work and being immediately sent home, Mr. Kalejaiye was indefinitely removed from QI Security's work schedule by Mr. Ricks. On June 26, 2018, Mr. Kalejaiye filed a Charge of Discrimination against QI Security with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging religious discrimination under Title VII.

24. While employed with QI Security, Mr. Kalejaiye observed other security officers with beards in excess of a quarter-inch in length. These officers were not required to shave their beards. Mr. Kalejaiye also observed other security officers with hairstyles that extended beyond their shoulders, in contravention of QI Security's regulations. These officers were not required to cut their hair.

25. Shortly after being removed from QI Security's schedule, Mr. Kalejaiye applied for unemployment benefits with the District of Columbia Department of Employment Services. The Department reached out to QI Security concerning Mr. Kalejaiye's application. QI Security incorrectly and wrongfully reported to the Department that Mr. Kalejaiye should not be entitled to unemployment benefits.

26. In early March 2019, Mr. Kalejaiye attempted to attend a job fair hosted by Bering Global Solutions at the Holiday Inn located at 550 C Street SW, Washington, D.C. 20024. Only incumbent armed security officers could attend. Upon entering the event, Mr. Kalejaiye informed the job fair employees that he was an employee of QI Security. The job fair attempted to process Mr. Kalejaiye, but informed him that his name was not included on the list of incumbent officers. Because QI Security wrongfully excluded Mr. Kalejaiye's name from its list of incumbent officers, Mr. Kalejaiye was ultimately unable to attend the event and take advantage of its opportunities.

27. On May 20, 2019, a government employee conducting a background investigation of Mr. Kalejaiye on behalf of the Department of Homeland Security informed Mr. Kalejaiye that he had spoken with QI Security as part of his investigation. The investigator informed Mr. Kalejaiye that QI Security had stated that Mr. Kalejaiye was no longer an employee with the company, and that Mr. Kalejaiye had left QI Security voluntarily. Mr. Kalejaiye has never received notice of termination.

28. QI Security's discriminatory and retaliatory actions have caused Mr. Kalejaiye emotional pain, suffering, inconvenience, loss of enjoyment of life, embarrassment, degradation, and humiliation. Additionally, QI Security's refusals to allow Mr. Kalejaiye to work because of his beard have caused Mr. Kalejaiye financial strain.

## Count I - Religious Discrimination

29. QI Security discriminated against Plaintiff based on Plaintiff's religious beliefs and practices, in violation of 42 U.S.C. § 2000e-2(a).

30. Plaintiff's bona fide and sincerely-held religious practice of growing out his beard conflicted with QI Security's requirement that employee's beards be less than a quarter-inch in length, Plaintiff brought his religious practice to QI Security's attention when he requested a religious accommodation, and Plaintiff's religious practice was the basis for QI Security threatening Plaintiff with being removed from the work schedule, not allowing Plaintiff to work, and ultimately removing him from their work schedule indefinitely.

31. QI Security did not claim to Plaintiff that granting his requested religious accommodation would result in an undue hardship for QI Security, or offer Plaintiff any reasonable, alternative accommodations.

## Count II – Retaliation

32. QI Security retaliated against Plaintiff for requesting a religious accommodation and for filing a charge of discrimination with the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

33. QI Security retaliated against Plaintiff for requesting a religious accommodation by repeatedly ignoring his request for accommodation, threatening to remove him from the work schedule if he did not shave his beard, refusing to allow him to work unless he shaved his beard, and for ultimately removing him from the work schedule indefinitely because of the length of his beard.

34. QI Security additionally retaliated against Plaintiff for requesting a religious accommodation, and for filing a charge of discrimination with the EEOC, by attempting prevent Plaintiff from receiving unemployment benefits, excluding Plaintiff from participating in a job fair for incumbent security officers, and for misrepresenting the circumstances of Plaintiff's employment with QI Security to a Department of Homeland Security background investigator.

### Count III – Tortious Interference with Prospective Advantage

35. QI Security committed tortious interference against Plaintiff, in violation of D.C. law.

36. QI Security intentionally excluded Plaintiff from participating in a job fair for incumbent security officers and misrepresented the circumstances of Plaintiff's employment with QI Security to a Department of Homeland Security background investigator in order to cause damages to Plaintiff and prevent him from gaining employment.

37. As a result of QI Security's tortious interference, Plaintiff was prevented from gaining employment through the job fair or the Department of Homeland Security, and suffered additional embarrassment, degradation, and humiliation.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A. Order Defendant to make Plaintiff whole by providing him compensation for back pay and front pay in amounts to be determined at trial, plus pre-judgment interest.

B. Order Defendant to make Plaintiff whole by providing him compensation for past and future nonpecuniary losses resulting from Defendant's discriminatory practices described in Paragraphs 9 through 28, including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, embarrassment, degradation, and humiliation, as well as punitive damages for Defendant's malicious and reckless conduct, in the amount of $300,000, pursuant to 42 U.S.C. § 1981a.

C. Order Defendant to make Plaintiff whole by providing him compensation for pecuniary and nonpecuniary losses resulting from Defendant's tortious interference, including punitive damages for Defendant's malicious and reckless conduct, in the amount of $200,000.

D. Grant such further relief as the Court deems necessary and proper in the public interest; and

E. Award Plaintiff its pre-judgment and post-judgment taxable costs and attorney's fees in this action.

**JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all questions of facts raised by this Complaint

Respectfully submitted,

*/s/ Mark Gore*

Mark Gore, Esq.
D.C. Bar No. 418237
Gore & Kuperman PLLC
4160 Chain Bridge Road
Fairfax, Virginia 22030
703-385-7300
703-272-7900
mgorelaw@aol.com
Counsel for Plaintiff